*FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARC HIRSCHFELD, | |
| Plaintiff, | Civil Action No. 18-14796 (FLW) (DEA) |
| v. | |
| | OPINION |
| MARY C. BECKERLE, D. SCOTT DAVIS, IAN E.L. DAVIS, JENNIFER A. DOUDNA, ALEX GORSKY, MARK B. McCLELLAN, ANNE M. MULCAHY, WILLIAM D. PEREZ, CHARLES PRINCE, A. EUGENE WASHINGTON, RONALD A. WILLIAMS, | |
| Defendants, and | |
| JOHNSON & JOHNSON, | |
| Nominal Defendant. | |

**WOLFSON, Chief Judge:**

Presently before the Court is a motion by nominal Defendant Johnson & Johnson ("Johnson & Johnson") and joined by Individual Defendants Mary C. Beckerle, D. Scott Davis, Ian E. L. Davis, Jennifer A. Doudna, Alex Gorsky, Mark B. McClellan, Anne M. Mulcahy, William D. Perez, Charles Prince, A. Eugene Washington, and Ronald A. Williams ("Individual Defendants") (together, with Johnson & Johnson, "Defendants"),[1] to dismiss the shareholder derivative complaint of Plaintiff Marc Hirschfeld ("Plaintiff") pursuant to Federal Rule of Civil

---

[1] Johnson & Johnson filed a formal motion to dismiss, while Individual Defendants submitted a letter joining Johnson & Johnson's motion. ECF No. 20-1.

1

Procedure 12(b)(6). In this shareholder derivative litigation, Plaintiff, representing other similarly situated investors of Johnson & Johnson's stock, alleges that Individual Defendants—members of Johnson & Johnson's Board of directors—violated their fiduciary duties. Specifically, Plaintiff maintains that Individual Defendants failed to prevent Johnson & Johnson from continuing to sell talc-based body powders, despite knowledge of research allegedly linking perineal talc application to ovarian cancer and tests allegedly indicating that Johnson & Johnson's talc contained asbestos or asbestos-like fibers. Defendants move to dismiss the Complaint on the basis that Plaintiff failed to make a pre-suit demand on Johnson & Johnson's Board of Directors, as is required by the New Jersey Business Corporation Act ("NJBCA"), N.J.S.A. 14A:3-6.3, and alternatively, even if that statute were inapplicable, Plaintiff has failed to adequately plead that a demand would have been futile. For the reasons stated herein, Defendants' motion is GRANTED, and Plaintiff's claims are dismissed without prejudice.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The facts are taken from the Complaint and assumed to be true for purposes of this motion. This action arises from the same factual underpinnings that are involved in thousands of cases in multiple courts across the country. Compl. at ¶ 10. Plaintiff alleges that since as early as 1971, Johnson & Johnson has been aware of tests indicating that the talc used in certain of its products contained asbestos or asbestos-like fibers. *Id.* at ¶ 5. Since as early as 1982, Johnson & Johnson allegedly has been aware of credible scientific studies concluding that a woman's repeated use of talc-based body powders in her genital region significantly increases her risk of developing ovarian cancer. *Id.* at ¶ 6. Despite this knowledge, Johnson & Johnson allegedly continues to sell its talc-based Baby Power and Shower to Shower products and disavows the presence of any asbestos contained in its products, or that there is any link between perineal talc

usage and ovarian cancer. *Id.* According to the Complaint, based on this willful conduct, the Individual Defendants (or their predecessors on the Board) directly violated their fiduciary obligations by: (i) refusing to place any cancer-related warning on Johnson & Johnson Baby Powder or Shower to Shower products; (ii) continuing to market such products as safe, and promoting the perineal use of those products by women; (iii) actively lobbying against Federal Drug Administration testing of asbestos levels in cosmetic talc products; (iv) forming a task force within a trade association to which Johnson & Johnson belonged to defend talc usage and undermine studies showing that it posed a public health risk; and (v) terminating research that it initiated and funded if the studies did not support Johnson & Johnson's claim that talc was safe and/or not linked to an increased risk of ovarian cancer. *Id.* at ¶ 9.

Plaintiff filed this suit on October 9, 2018, bringing one count for breach of fiduciary duties by Individual Defendants. In the Complaint, Plaintiff frankly admits that he "has not made a demand on the Board of Directors of the Company to file a suit asserting the claims specified herein" because "[s]uch a demand would be futile and useless." *Id* at ¶ 99.[2] Subsequently, Defendants filed the present motion, arguing that Plaintiff's claims must be dismissed because the NJBCA eliminated the concept of demand futility, and, furthermore, Plaintiff's demand futility allegations are inadequate.

## II.     **LEGAL STANDARD**

---

[2] According to Defendants, another shareholder previously made a demand on Johnson & Johnson's Board with respect to matters similar to those alleged in the Complaint. *See* Decl. of D. Wong Yang ¶ 3. In response to that demand letter, the Board retained independent legal counsel, "to investigate, review, and analyze the facts and circumstances surrounding the allegations raised in the demand letter, as well as any subsequently received demands or shareholder derivative lawsuits making similar allegations." *Id.*

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability

requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (quotations and brackets omitted).

## III. DISCUSSION

Defendants move to dismiss on two grounds: first, they argue that Plaintiff failed to make a pre-suit demand on the Board of Directors of Johnson & Johnson, which is required by the NJBCA, and second, that even if no such statutory requirement exists, Plaintiff has failed to adequately plead that making a demand would have been futile. Because I find that the NJBCA makes pre-suit demand mandatory, unless the corporation opts out of the requirement, where Johnson & Johnson has not, Plaintiff's suit is dismissed, and I need not reach the demand futility argument.

### A. New Jersey Pre-Suit Demand Law

Under Federal Rule of Civil Procedure 23.1, "a shareholder may file a derivative suit against the board of directors to claim enforcement of a right of the corporation where the corporation has failed to assert that right." *Kanter v. Barella*, 489 F.3d 170, 176 n. 5 (3d Cir. 2007). Shareholder derivative suits typically require plaintiffs to make pre-suit demand on the

5

board of directors that the board bring suit on behalf of the corporation. *Blasband v. Rales,* 971 F.2d 1034, 1048 (3d Cir. 1992). The reason for this requirement is that "[t]he decision to bring a lawsuit or to refrain from litigating a claim on behalf of the corporation is a decision concerning the management of the corporation and consequently is the responsibility of the directors." *Id.* (citations omitted). *See also In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 399 (3d Cir. 2007). Rule 23.1 contains specific procedural requirements for pleadings in derivative suits; plaintiffs must "plead with particularity their efforts to obtain the desired action from the directors or the reasons for not obtaining the action or making the effort to obtain that action." *Freedman v. Redstone*, 753 F.3d 416, 423 (3d Cir. 2014) (citing Fed.R.Civ.P. 23.1).

Although Federal Rule of Civil Procedure 23.1 provides the procedural vehicle for addressing the adequacy of a shareholder derivative complaint, "[t]he substantive requirements of demand are a matter of state law." *Id.* at 424 (quoting *Blasband v. Rales,* 971 F.2d 1034, 1047-48 (3d Cir. 1992)); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96–97 (1991) (holding that "although Rule 23.1 clearly *contemplates* both the demand requirement and the possibility that demand may be excused, it does not *create* a demand requirement of any particular dimension"). This is because "[c]orporations…are creatures of state law,…and it is state law which is the font of corporate directors' powers." *Kamen*, 500 U.S. at 98 (citations omitted). Thus, "gaps in…statutes bearing on the allocation of governing power within the corporation should be filled with state law unless the state la[w] permit[s] action prohibited by the Acts, or unless its application would be inconsistent with the federal policy underlying the cause of action...." *Id*. at 99 (citations omitted). Because "the contours of the demand

6

requirement—when it is required, and when excused—determine *who* has the power to control corporate litigation," the requirement is, therefore, governed by state substantive law. *Id.* at 101.

Under New Jersey law, prior to 2013, courts evaluated the adequacy of pre-suit demand pleadings under New Jersey Rule of Court 4:32-5, which "codified the common law requirement that a derivative suit plaintiff plead with particularity either his efforts to induce board members to take the desired remedial action, or the reasons why such efforts would have been useless." *In re Prudential Ins. Co. Derivative Litig.*, 282 N.J. Super. 256, 268 (Ch. Div. 1995). In mandating that a plaintiff who did not make a demand explain why doing so would have been useless—a concept known as demand futility—New Jersey courts required a plaintiff to "plead with particularity facts creating a reasonable doubt that: (1) the directors are disinterested and independent, or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. If either prong is satisfied, demand will be excused under Rule 4:32–5." *In re PSE & G S'holder Litig.,* 173 N.J. 258, 282 (2002).

In 2013, however, New Jersey enacted a statutory demand requirement as part of the NJBCA, categorically requiring shareholders to make a pre-suit demand on a corporation prior to filing a derivative suit. Indeed, the statutory language purposely omitted any "demand-futility" language:

> No shareholder may commence a derivative proceeding until:
>
> (1) a written demand has been made upon the corporation to take suitable action; and
>
> (2) 90 days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

7

N.J.S.A. 14A:3-6.3. When first enacted, this statutory demand requirement (and all other provisions of the NJBCA that dealt with shareholder derivative proceedings, N.J.S.A. 14A:3-6.1, *et seq.*) applied to a corporation only if that corporation made the provisions applicable in its certificate of incorporation. *See* Corporations–Shares and Shareholders—Derivative Actions and Proceedings, 2013 NJ Sess. Law Serv. Ch. 42, N.J.S.A. 14A:3–6.9 (2013).

In January 2018, the NJBCA was amended so as to apply the shareholder derivative provisions automatically, making the provisions applicable *unless* the corporation indicated otherwise in its certificate of incorporation. In particular, section 14A:3-6.9 of the NJBCA provides that, "in any derivative proceeding or shareholder class action" against a New Jersey corporation:

> a. Except for sections [unrelated to the demand requirement], which must be expressly made applicable by the corporation's certificate of incorporation, the provisions of P.L.2013, c. 42 (C.14A:3-6.1 et seq.) shall apply to actions brought in state or federal court both within and outside of the State of New Jersey; and
>
> b. The provisions of the corporation's certificate of incorporation may vary the applicability or effect of the provisions of P.L.2013, c. 42 (C.14A:3-6.1 et seq.) on that corporation.

N.J.S.A. 14A:3-6.9.

## B. Statutory Interpretation

In the present matter, although Johnson & Johnson has not opted out of the statutory demand requirement under the NJBCA, Plaintiff argues that he should be excused from making a demand so long as he can adequately plead futility. Indeed, Plaintiff's central argument is not textual, and, in that regard, generally does not dispute that the statutory language of the NJBCA does not include a demand futility exception. Rather, Plaintiff contends that—the NJBCA notwithstanding—pleading demand futility is still viable through NJ Rule 4:32–3. Nonetheless,

this Court's analysis "begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (citing *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685 (1985)).

In interpreting a statute, "when the statutory language is clear and unambiguous, the legislature's intent is best divined by reference to the plain meaning of a statute." *Sery v. Fed. Bus. Centers, Inc.*, 365 F. App'x 396, 397 (3d Cir. 2010). "[T]he plain meaning of statutory language is often illuminated by considering not only the particular statutory language at issue, but also the structure of the section in which the key language is found, the design of the statute as a whole and its object." *Alaka v. Attorney General*, 456 F.3d 88, 104 (3d Cir. 2006) (internal quotation marks omitted). When "the statute's language is plain," the court's inquiry must end, as "the sole function of the courts is to enforce it according to its terms." *Ron Pair Enters.*, 489 U.S. at 241 (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).[3]

Here, the statute is clear on its face that, in a derivative action, pre-suit demand is mandatory in all circumstances: "No shareholder may commence a derivative proceeding until…a written demand has been made upon the corporation to take suitable action." N.J.S.A.

---

[3] Although I cite to federal statutory interpretation case law, I note that "courts have no consistent answer to th[e] question" of whether "the *Erie* Doctrine and its 'reverse-*Erie*' mirror require state and federal courts to apply one another's statutory interpretation methodologies when they interpret one another's statutes." Abbe R. Gluck, *Intersystemic Statutory Interpretation: Methodology As "Law" and the Erie Doctrine*, 120 Yale L.J. 1898, 1898 (2011). Nonetheless, in the present case, the interpretative methodologies that I employ—for instance, looking to the plain language of the statute—are consistent with both federal and New Jersey case law, *see*, *e.g.*, *Fed. Bus. Centers*, 365 F. App'x at 397, *Morristown Assocs. v. Grant Oil Co.*, 220 N.J. 360, 380 (2015) ("[W]e focus on the plain language of the statute because it is "the best indicator" of the Legislature's intent."), and "whichever [law] governs, the result is the same." *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 261 (2d Cir. 2014).

14A:3-6.3. The statute provides no exceptions to this requirement, which is particularly notable because, in the same statutory section, the drafters *did* in fact include two other exceptions to the requirement that a shareholder must wait 90 days after the demand has been made until filing suit (i.e. if "the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period," N.J.S.A. 14A:3-6.3(2)). Clearly, having contemplated certain exceptions, the drafters could have—but did not—include a futility exception to the demand requirement. This Court "cannot…imply such an exception, for '[w]here [the legislature] explicitly enumerates certain exceptions…additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.'" *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 772 n.10 (3d Cir. 2018) (quoting *United States v. Smith*, 499 U.S. 160, 167 (1991)). Indeed, as one New Jersey court interpreting another provision of the same statute has commented, "[h]ad the Legislature intended to preserve the entire body of common law rights, it could have expressly said so." *Feuer v. Merck & Co.*, 455 N.J. Super. 69, 86, (App. Div. 2018), *aff'd*, 238 N.J. 27 (2019). Thus, on its face, N.J.S.A. 14A:3-6.3, 6.9 makes pre-suit demand on a corporation mandatory prior to filing a derivative suit, unless a corporation opted out of that requirement in its certificate of incorporation.

Indeed, that the drafters did not include a demand futility exception in the text is not surprising because the statute at issue was modeled after a nearly identical provision in the Model Business Corporation Act ("MBCA). *See* Stmts. Accompanying N.J. Assemb. Bill No. 3123 and S. Bill No. 2326 at 6:42–43 ("The bill is largely based on sections 7.40 to 7.47 of the [MBCA]."). Courts in other jurisdictions interpreting similar MBCA-modeled statutes have

uniformly rejected arguments that these statutes did not eliminate the demand futility exception.[4]

For instance, in Idaho, before an MBCA-modeled statute was enacted, a futility exception "arose by case law" and was "previously recognized by the courts." *McCann v. McCann*, 61 P.3d 585 (Idaho 2002). In *McCann*, the Idaho Supreme Court analyzed Idaho's MBCA-modeled statute and noted that—identically to the NJBCA—contained "two exceptions" to the requirement that a shareholder must wait 90 days after the demand was made until filing suit: (1) if "the corporation had already previously rejected [the shareholder's] requests;" and (2) if "the corporation was being irreparably harmed." *Id.* at 592–93. As the legislature included these exceptions, the Court "presume[d] the legislature was aware of the common law futility exception when the statute . . . was adopted," and noted that "the legislature chose not to add a provision expressing the concept of futility as an exception." *Id.* at 593. Accordingly, the *McCann* Court held that the Idaho statute was "a clear demonstration of the legislature's intent to no longer recognize 'futility' as an exception to the requirement of demand." *Id.*[5] Idaho is not alone. *See, e.g., Speetjens v. Malaco Inc.*, 929 So. 2d 303, 309 (Miss. 2006) ("The fact is, Mississippi's written demand

---

[4] Although New Jersey courts have not expressly ruled on the issue of whether the statute eliminated demand futility, one court has indicated that the statute has made pre-suit demands mandatory. *See Tully v. Mirz*, 457 N.J. Super. 114, 125 (App. Div. 2018) ("For example, in a derivative suit, a would-be plaintiff is required to issue demand upon the corporation to take action and to then allow ninety days to elapse, unless notified the demand was rejected by the corporation, prior to commencing a derivative suit") (citing N.J.S.A. 14A:3-6.3).

[5] Plaintiff argues that *McCann* is distinguishable because, there, the two exceptions in the statute were exceptions to the timing of a derivative action once a demand had already been made, rather than exceptions to the demand requirement. The point that the *McCann* Court was making*,* however, was that the legislature chose to include these common exceptions to the 90-day rule, but chose not to include any exceptions to the requirement that demand be made in the first instance. Thus, viewing the statutory section holistically, the court reasonably concluded that the legislature would have also included a demand futility exception had it chosen to. I am in agreement with that reasoning.

11

statute does not contain an exception for futility, and unless and until the Legislature decides to include one, it does not exist."); *Allen ex rel. Allen & Brock Constr. Co., Inc. v. Ferrera*, 540 S.E.2d 761, 765 (N.C. Ct. App. 2000) ("Plaintiff contends that the futility exception remains valid law under the present N.C. Gen.Stat. § 55–7–42….However, we have previously held that the enactment of N.C. Gen.Stat. § 55–7–42 abolished the futility exception under North Carolina law."); *Dunn v. Ceccarelli*, 489 S.E.2d 563, 568 (Ga. Ct. App. 1997) (concluding that the "'doctrine of futility,' as it is known in some states, is not applicable in Georgia to business or nonprofit corporation derivative claims"). *See also Ark. Teacher Ret. Sys. ex rel. Progress Software Corp. v. Alsop*, 2007 WL 7069609, at *8–9 (D. Mass. Sept. 22, 2007) ("Plaintiff[]…attempts to import a futility exception into section 7.42. The plain language of section 7.42, however, does not contain a futility exception.").[6] These courts recognized that nothing in these MBCA-modeled statutes supports the existence of an implied demand futility exception, and I agree the same is true under the NJBCA here.

Having determined that the plain language of the NJBCA does not support a futility exception to pre-suit demand, I need not consult other sources to ascertain the statute's meaning.

---

[6] Plaintiff argues that several courts have discussed the vitality of demand futility under New Jersey law after the enactment of the NJBCA. However, two of those cases were filed before the 2013 statute became effective on April 1, 2013, and, therefore, the plaintiff in those cases could not have been subject to the statute's demand requirement. *See City of Roseville Emps.' Ret. Sys. v. Crain*, 11-2919, 2013 WL 9829650 (D.N.J. Sept. 26, 2013) (Complaint filed May 20, 2011); *Rachel's Children Reclamation Found., Inc. v. Elon*, 49 Misc. 3d 1208(A), 2015 WL 6080392 (N.Y. Sup. Ct., Kings Cty. Oct. 5, 2015) (Complaint filed Mar. 20, 2013). The third, *Ricciutti v. McEwan*, was decided before the 2018 amendment to the NJBCA, when a corporation was still required to opt into the statute. *See* A-2303-14T2, 2015 WL 10015196 (N.J. Sup. Ct. App. Div. Feb. 10, 2016). As the decision does not say whether the corporation there had expressly opted into the NJBCA, Plaintiff cannot rely on the case for the proposition that demand futility remains viable under the statute. *Id.* Accordingly, none of these cases support Plaintiff's position.

Nonetheless, because Plaintiff argues, albeit erroneously, that the statute's legislative history does not clearly indicate legislative intent to eliminate the futility exception, an examination of the legislative history of both the MBCA and the NJBCA puts Plaintiff's claims to rest. The comment to MBCA § 7.42 states that the provision "*requires* a written demand" in order to "give the corporation the opportunity to reexamine the act complained of in the light of a potential lawsuit and take corrective action" and also to "eliminate[ ] the time and expense of litigating whether demand is required." MBCA § 7.42, cmt. Citing to this official commentary, the Supreme Court has recognized that the MBCA "abolishes the futility exception to demand."[7] *Kamen*, 500 U.S. at 104 n.8. Nor, as Plaintiff contends, is the legislative history surrounding the NJBCA silent on the issue of whether pre-suit demand is mandatory in all contexts: the Sponsor Statements to the 2013 Assembly and Senate bill, which made the demand requirement opt-in at the time, provided:

> Under the bill, a New Jersey corporation may amend its certificate of incorporation to supersede judicial case law developments regarding demand requirements and adopt the statutory standards. This allows corporations to avoid derivative suits that may impose unnecessary costs on the corporation. If adopted by a corporation, *demand is required in every derivative proceeding* and disinterested directors, shareholders, or court appointed professionals are authorized to make a decision, after a good faith investigation, that the derivative proceeding is not in the best interests of the corporation.

Stmts. Accompanying N.J. Assemb. Bill No. 3123 at 6:32–41, and S. Bill No. 2326 at 6:29–38 (emphasis added). Although the Sponsor Statement does not specifically mention demand

---

[7] The NJBCA's demand requirement is nearly identical to MBCA § 7.42—the only difference is that MCBA § 7.42 requires a shareholder to make a written demand and wait to file a derivative suit until 90 days "from the date delivery of the demand was made," whereas the NJBCA's demand requirement requires waiting 90 days "from the date the demand was made." *Compare* N.J.S.A. 14A:3-6.3 and MBCA § 7.42.

futility, Plaintiff is hard-pressed to argue that the legislature intended such an exception to exist in the face of a clear statement that "demand is required in every derivative proceeding."[8] *Id.* Thus, neither the plain language nor the legislative history support reading a demand futility exception into the NJBCA.

C. **NJ Rule 4:32-5**

Plaintiff's main rebuttal rests on his argument that, despite the enactment of the NJBCA, NJ Rule 4:32-5—the rule that, prior to 2013, was the source of New Jersey's demand requirement—still contains a futility exception, and that exception has not been abrogated. Put differently, Plaintiff argues that, because that rule has not been repealed or amended in light of N.J.S.A. 14A:3-6.3, demand futility remains a viable option in New Jersey. This argument fails for two reasons.

First, NJ Rule 4:32-5, like Federal Rule of Civil Procedure 23.1, is a *procedural* rule rather than a source of substantive law, that sets forth the adequacy of a plaintiff's pleading in a derivative action. Indeed, New Jersey limits the rule-making power of its Supreme Court to "practice, procedure, and administration," and dictates that "in areas of substantive law (as opposed to procedural law, court rules must yield to legislation." *See State ex rel. Y.S.*, 934 A.2d 1140, 1144 (N.J. Super. Ct. Ch. Div. 2007) (citing *Winberry v. Salisbury*, 74 A.2d 406 (N.J. 1950)). *See also N.J. State Bar Ass'n v. State*, 387 N.J. Super. 24, 48 (App. Div. 2006) (distinguishing "between the realm of practice and procedure, which is vested exclusively within the Supreme Court, and the realm of substantive law, the exclusive domain of

---

[8] That the NJBCA was amended in 2018 in no way alters or diminishes the significance of this 2013 Sponsor Statement. Indeed, the amendment simply broadened the statute's reach by making it opt out rather than opt in.

14

the Legislature"); *N.J. Dist. Court Ass'n, Inc. v. N.J. Sup. Ct.*, 205 N.J. Super. 582, 586 (Law. Div. 1985), *aff'd sub nom.*, 208 N.J. Super. 527 (App. Div. 1986) (The Supreme Court's "power to promulgate rules is restricted to the realm of practice and procedure."). As such, NJ Rule 4:32-5, enacted by the New Jersey Supreme Court, is a rule of procedure, not substance, and Plaintiff here cannot rely on such a rule to contradict substantive legislation like the NJBCA. In *Kamen*, the Supreme Court explained that demand futility is a matter of state substantive law: "the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of substance,' not 'procedure.'" *Kamen*, 500 U.S. at 96–97 (citations omitted). The Court held that Rule 23.1 "speaks only to the adequacy of the shareholder representative's pleadings," *i.e.*, the requirement for pleading with particularity, but does not "abridge, enlarge, or modify any substantive right," and the requirement for demand and any demand futility exception are defined by the law of the state of incorporation. *Id.* at 96–97, 108–09. Like Rule 23.1, the procedural NJ Rule 4:32-3 sets forth pleading standards for derivative suits in New Jersey, and, therefore, must yield to the substantive NJBCA requiring that demand be made in all circumstances.

Second, even if Rule 4:32-5 were a source of substantive law, the fact that it contains demand futility language and has not been amended is not necessarily inconsistent with N.J.S.A. 14A:3-6.3. As previously noted, the NJBCA is now an opt-out statute. Although demand is required in all circumstances in cases involving corporations that have not opted out of the statute, it is unclear at this juncture whether demand futility remains viable for corporations that opt out of the statute's protections. Hence, if a corporation were to opt out of the statute, the common law demand requirement—including the traditional common law demand futility exception—remains extant, and thus, a plaintiff could potentially still plead demand futility

15

through NJ Rule 4:32-3.[9] Plaintiff, therefore, cannot avoid N.J.S.A. 14A:3-6.3's substantive demand requirement—when Johnson & Johnson has not opted out of such requirement—by relying on the NJ Rule 4:32-3, which only provides procedural requirements.

Accordingly, Plaintiff's failure to make a pre-suit demand on the board requires dismissal of his Complaint.[10]

## IV.   **CONCLUSION**

For the foregoing reasons, Defendants' motion is GRANTED and Plaintiff's claims are dismissed without prejudice.


Dated:  September 27, 2019                               /s/ Freda L. Wolfson
                                                        Hon. Freda L. Wolfson
                                                        U.S. Chief District Judge

---

[9] To be clear, as the issue is not before me, I not ruling on whether demand futility remains viable for corporations that opt out of the NJBCA. I merely note that, as written, Rule 4:32-3 might still have some force even after the NJBCA's passage, which weakens Plaintiff's argument that the legislature would have repealed or amended the Rule had it truly intended to eliminate demand futility.

[10] Plaintiff asks for leave to amend on several bases. However, because all of these bases relate to bolstering the demand futility allegations, none can cure Plaintiff's failure to make demand before filing this suit. Thus, dismissal is appropriate, as Plaintiff cannot remedy the failure to make a demand through amendment.

16